## DOWNS *v.* SPRAGUE.

December, 1865.

It is competent .o ask a gas-fitter, examined as a witness, in an action for the price of gas *meters*, alleged to have been furnished to fulfill a contract for gas *fixtures*, whether gas meters are usually classified as gas fixtures.

Facts on which defendants in an action for the price of goods were held merely to have acted on behalf of a third person in shipping the goods.

Samuel Downs sued Edgar Sprague, Gilbert R. Van Allen and Frederick A. Ayres, in the New York superior court, for the amount of a bill for gas meters. The question litigated was whether the meters were sold to defendants, who were contractors for the erection of gas works for a company in Vera Cruz, or to that company.

All the testimony offered by the plaintiff with the view of connecting the defendants with the purchase was this: In February, 1855, one Isaac W. Ayres entered into a contract with Doctor Naphegyi & Co., of Vera Cruz, for the erection of gas works, and the laying of street mains in Vera Cruz. The contract was specific as to the work to be done, and the materials to be furnished by Ayres, and was confined exclusively to the

construction of the works for manufacturing gas, and to laying the mains. Ayres was to have twenty-five thousand dollars for doing the work, to be paid to him by the gas company, at specified periods; and, as a further compensation, was to share equally with the company in the profits of the first two years of the company's business. The contract was assigned by Ayres to the defendants, and they assumed the performance of the work. About the time the contract was concluded, Naphegyi, who was in New York, purchased a bill of meters from the plaintiff. These meters were found to be too large, and he, therefore, filled up another order, and sent it to New York, by one of the defendants' workmen. These meters (which was the bill in dispute) were delivered by the plaintiff, at the foundry of Ayres & Floyd (who were employed by the defendants to do some of the work intended for the Vera Cruz Gas-light Company under the contract mentioned), and were afterward, with other work belonging to the defendants, which they had caused to be done in New York in fulfillment of the Ayres contract, shipped to Vera Cruz on board a vessel owned by one of the defendants. While the contract for erecting the gas works was being performed, the defendants sent one of their workmen to Vera Cruz to do gas-fitting and other work in connection with the gas house and, while there, he was employed by the gas company to put up the meters, for which services the company subsequently compensated the defendants.

Defendants, to show that their contract did not include furnishing meters, were allowed to put the question stated in the opinion of WRIGHT, J.

The jury found for defendants, and from judgment thereon plaintiff appealed.

POTTER, J.—1. Upon the first point raised by the plaintiff, viz: whether it was error to ask a gas-fitter whether "gas meters" are usually classified as "gas fixtures," it may be said the question called for information, not to vary the terms of the agreement introduced, or the legal effect of evidence that had been offered, but to explain whether, in the known usage or trade of gas-fitting, "gas meters" were included or known as "gas fixtures." The propriety of the explanation will appear from the

fact that the witness to whom the question had been put, had previously testified that the defendant, Van Allen, had sold the *gas fixtures* in Vera Cruz; and, also, that the written agreement introduced gave the defendants the exclusive privilege of furnishing gas-fixtures. If *gas meters* were known in the trade as "*gas fixtures*," it increased the strength of the evidence in the case against the defendants. The testimony in this view was important. The question is, was the question legally admissible? There are many terms made use of in particular trades and occupations, and in commercial usage, which have known and established meanings in those particular callings or business, which are not so uniformly known to others outside of those departments of business. Between a manufacturer of meters, and a fitter up of gas fixtures and gas meters, the meaning of the terms referred to, may well be supposed to be understood. "Gas-meters" were not mentioned in the terms of this contract, unless it was included in the term "fixture." I think the inquiry was proper within the rules of admitting evidence. 1 *Greenl. Ev.* § 292. It might have been different had the question been designed to prove a different meaning of a word actually used, than that which is ordinarily understood to be its plain, common and popular sense. The word "gas meter" had not been used. The evidence was offered to show that in the trade, the word "meter" was not included in the term "fixture." This is not a violation of the general rule, that no other words can be added or substituted by parol evidence, to the language employed by parties making a contract, than that which is furnished by the contract itself. In this I think the court committed no error.

2. It is very clear that the court committed no error in refusing to charge that the facts proved raised the presumption that goods were purchased for the benefit of the defendants, either jointly with others or severally. This was asking the court to take from the jury a question entirely within the province of the jury. There was evidence to raise the contrary presumption, and it was not therefore the duty of the court to charge as requested.

3. I have not been able to see the error in the charge of the judge in saying to the jury "that if they believed the testimony

of the defendant Van Allen, they must find for the defendants." Van Allen had testified that the defendants never had any thing to do with the meters, except as he had before testified, which was, that he called on the plaintiff and advised him about the shipping of them, and he swears that the meters were ordered by Dr. Naphegyi, and that plaintiff desired him (Van Allen), when he was going to Vera Cruz, to take the bills along with him and collect them of the gas company, to whom they were charged. If this story was true, there could be no liability on the part of the defendants, and it was no error of the judge to say so to the jury.

I think the judgment should be affirmed.

WRIGHT, J. The three exceptions in the case will be briefly considered.

1. As to the question to the plaintiff's witness Boyle, on his cross-examination, viz.: "From your experience as a gas fitter, state whether gas meters are usually classified as gas-fixtures?" The case states that the question was not objected to on the ground of form; but the precise objection taken, if any, is not stated. Permitting the question to be answered is not error that should lead to a reversal of the judgment. The witness, on his direct examination, had used the term "gas fixtures," and it was also used in the agreement that had just before been read by the plaintiff as a part of his case. The inquiry was well enough, by way of explaining the writing. But, if strictly improper, the answer elicited could, by no possibility, have prejudiced the plaintiff.

2. The plaintiff's counsel requested the court to charge the jury that, upon the facts proven, the presumption of law is, that the goods were purchased for the benefit of the defendants, either individually or jointly with Naphegyi & Co. This request was properly refused. Whether the meters were purchased for the defendants' benefit, in any way, was a question sharply litigated on the trial, and in respect to which there was not only conflicting evidence, but it strongly preponderated in favor of the conclusion that they were purchased for the exclusive benefit of the Vera Cruz Gas-light Company. Though the defendants were assignees of a contract with Naphegyi & Co. to erect

gas works and lay street mains in the city, neither they nor their assignees were bound, in any way, to furnish meters for the use and benefit of the company. It was no' part of their contract. Nor was there any evidence that they assumed to furnish them under their contract; but, on the contrary, the proof tended strongly to show that they were bought by and on the credit of the gas company, and that such company employed and paid the defendants for putting them into the building, where gas was introduced, as a distinct and independent matter. In this state of the case, the proposition was an absurd one to be given to the jury, that it was a legal presumption that the meters were purchased for the benefit of the defendants.

3. The court charged that if the defendants bought the goods, or if they bought them jointly with Naphegyi & Co., or if they were delivered to them, and they used them, they are liable in this action for their value; but if they believed the testimony of the defendant Van Allen, they must find a verdict for the defendants, otherwise their verdict must be for the plaintiff; that the plaintiff was entitled to a verdict, unless the jury should find, by evidence sufficient to rebut the legal presumption, that the credit was given to Naphegyi & Co., and not to the defendants. There was an exception to so much of the charge as charged " that if the jury believed the testimony of the defendant Van Allen, they must find a verdict for the defendants."

If either party had reason to complain of this charge, in all its parts, it was the defendants, and not the plaintiff. The meters in question were ordered by and charged to the gas company on the books of the plaintiff, and it was not until the company failed to make payment, that there was any suggestion or pretense that the sale was made to the defendants. It is very apparent, from the undisputed evidence, that the credit was given to Naphegyi & Co., and that it was an after-thought to charge any liability upon the defendants. All the testimony offered by the plaintiff with the view of connecting the defendants with the purchase was this:.

[The judge here recited the testimony stated in the statement of facts above.] Yet, upon these uncontroverted facts, the judge charged the jury that the plaintiff was entitled to recover the value of the meters, unless they should find by

evidence sufficient to rebut the legal presumption, that the credit was given to the gas company, and not to the defendants. There can be no pretense that the plaintiff was entitled to recover at all against the defendants, unless the meters were actually sold to them, or, so far as third persons were concerned, themselves and the gas company were to be treated as copartners. Any such theory, if it rested on any proper foundation, was utterly exploded by the testimony of Van Allen, and the court well and properly said to the jury, that if they believed his testimony, the defendants were entitled to a verdict. That testimony conclusively established the non-liability of the defendants. It was positive and explicit that they had nothing to do with the meters, either in their purchase or use, and had no interest in them, but that they were ordered by Naphegi & Co.; and all that he and his firm did in relation to them was as the friends of Naphegyi and the plaintiff. And in this he was corroborated by both the other defendants, and by Boyle, the witness for the plaintiff.

There was, therefore, no error in the charge as to the effect of the testimony of Van Allen. If he was to be credited, that was the end of the plaintiff's case.

The judgment should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.